Based on the morning document is People v. LeVar Pierce. Counsel. Thank you, Your Honor. Good morning, and may it please the Court. Counsel. My name is Daniel Janowski, and I represent the appellant defendant in this matter, Mr. LeVar Pierce. The only reason why we're here this morning is due to a recent change in Illinois law, so I'd like to begin with just a brief timeline of what's occurred. In 2013, my client was convicted of an aggravated unlawful use of a weapon, which in 2015 was declared unconstitutional by the Illinois Supreme Court and People v. Mosley. So that meant that the law at the time of my client's sentencing in October of 2016 was People v. McFadden, an Illinois Supreme Court decision. Which allowed that statutes that were found unconstitutional, convictions based upon those statutes were subject to being vacated, and if the defendant failed to have that vacated, they could still be used as predicate offenses in subsequent crimes, or as corollary could be used in aggravation and sentencing for additional crimes. And since my client had not had that conviction vacated, I believe it was proper that the trial court consider that 2013 conviction as a conviction in aggravation and his sentence, sentencing him to 29 years for home invasion. Now, during the pendency of this appeal, last year, 2018, the Illinois Supreme Court issued a decision of NRAG-NG, and while that is a termination of parental rights case, it explicitly says that where these decisions are incongruent with each other, McFadden is overruled. And NRAG-NG says that in McFadden we had gotten this issue a little off the tracks and in ways that was incorrect. And so NRAG-NG stood for the proposition that any conviction based upon a finding of unconstitutionality should be then therefore treated as if it had never existed and cannot be used for any purpose, either in enhancing a sentence or being used to increase the severity of a crime. And NRAG-NG says that the court is under a duty to any court that's got a jurisdiction over a defendant has a duty then therefore to vacate these convictions based upon unconstitutional statutes. And so therefore, that brings me to the first relief that we're requesting from this court, and it is that this court take judicial notice of my client's 2013 conviction for aggravated unlawful use of a weapon. A copy of that judgment of conviction has been appended to our brief. Take judicial notice of that and vacate it based upon people against Mosley. And so then the more pressing issue for my client then is that since this conviction should not be considered, since it was an unconstitutional statute, therefore the trial court abuses discretion at sentencing in considering that conviction. And so therefore, as this court's aware, the court can abuse its discretion at sentencing by considering an improper sentencing factor. And here it would be that conviction would be what we would allege to be improper. And there the trial court had found that my client's criminal history was significant, was a significant factor in handing down that sentence, and specifically mentioned, among others, his four-year sentence for the AUUW conviction. And looking at the list of convictions that my client had before, this was the only one that could have been considered a violent offense before the Holmes agent had issued here. He had an unlawful use of a credit card as well as a sale and distribution of marijuana over the two that seemed out to me. And he had a juvenile case as well. But this was the only adult conviction that could be considered to be a violent offense. And so therefore, looking at the fact that this would be the first violent offense, looking at the fact that the court had said that this criminal history was a significant factor, and looking at the fact that my client had received 29 years out of a possible 30 years for a class X felony, I think it shows that at the very minimum we can say that we can't determine the way that it was placed upon this conviction. And so therefore, an abuse of discretion would be the finding we ask for this court. The only real decision that I was able to find that looks at this issue was the 1981 case of Fisher, people against Fisher from the 1st District. There was a marijuana conviction sometime in the 70s, I believe, that was later determined to be based upon an unconstitutional statute. Then at his sentencing for the crime in the case in 1981, the trial court had considered that marijuana conviction even though that statute had been declared facially unconstitutional. And the appellate court there found that that was an abuse of discretion and remanded for a new sentence. And so there, in conclusion then, we would ask that this court vacate my client's 2013 conviction for AUW and then remand for a new sentencing hearing where the trial court wouldn't consider that conviction. Do you think that plain error is the standard of review here? I don't think – I would think it would be a de novo standard of review to see whether – I'm sorry. Let me back up. The abuse of discretion would be the standard, I believe. And I don't think that plain error would fall into this just because my client was not in a position to be able to – I know the argument is that my client had waived this issue. But since NRENG hadn't been decided yet, it wasn't an issue that could have been preserved by the trial court because they had followed the law at the time. It's just a subsequent Illinois Supreme Court decision changed the law. Since this case is then pending, that new change in law then should apply to this case. But the state at its argument in sentencing, as I understand it, indicated to the court that the conviction that they were discussing, that the statute had been declared unconstitutional. So the court knew that at the time of the sentencing. So how are we to know that the court improperly considered the conviction as opposed to the facts of the case in this 29 years? I think that the reason why we can see in the record why the trial court had considered the conviction was the trial court enlisting out his convictions after the discussion on this unconstitutionality had already occurred. The trial court had said, and you've got this four-year conviction with a four-year sentence to IBOC. And so the only conviction he had with a four-year sentence was the AAUW conviction. And so I think that would be showing that this was considered – that the conviction was considered even though it was unconstitutional. So that statement that was made by the court, you believe, is the one statement where the court considered the conviction as opposed to the facts that would have been underlined? Yeah, I think so. I would submit that. I think also the fact that – I know that there's kind of a distinction between, okay, the court can consider bad acts during conviction even though it might not have been a conviction. But here, since that statute was declared unconstitutional, officially unconstitutional for carrying a firearm, that in rating of G, it suggests that since that was not illegal, you know, that statute was not constitutional, there were no bad acts there that, therefore, for an underlying court to consider. And so, therefore, any consideration of that conviction or any facts underneath there, I would posit to the court, would be an abuse of discretion. So, okay. So you're saying that under no – under NRANG, under no circumstances could any facts underlying the conviction have been considered? Yes. That's what I'm saying. Okay. Any further questions from the court? No. All right. Thank you. Thank you. May it please the court. Counsel. Jessica Book for the people. Your honors. Sentencing – the sentencing court is in the best position to consider matters relating to the sentencing determination and then is vested with wide discretion to make a reasoned judgment with regard to the penalty.  Here, the claim is that the court relied on the 2013 AUUW conviction in fashioning the 29-year sentence. It's our position that the 29-year sentence, because it's within the statutory limitations, using the presumption that the sentence is proper, it does not vary greatly from the purpose and the spirit of the law, and it's not arbitrary, fanciful, or unreasonable. In looking at that, one could look at the facts underlying the defendant's offense, in that he and an accomplice broke into Mr. Riggs and Ms. Bennett's residence with a gun and wearing masks, so they were concealed, and then proceeded to hit them over the head, and then in defending himself, Mr. Riggs had his hand practically cut off, not just like a little scratch, but it was cut off to where it was hanging on by a little bit of skin. He had to be taken to Cape Girardeau to have staples in his head, and then he had to be taken to St. Louis to have his hand reattached, and he had to have tendons taken from the back of his head and arteries taken from his foot, and he testified that his hand is numb and he no longer has use of it. He also provided a victim impact statement that was included in the PSI, where he said that he has lasting conditions from this, beside the physical ones, in that he has insomnia, he's afraid to leave his house, and he stated that he was in fear of his safety because of retaliation if the defendant was sentenced on the low side of the statutory guidelines. As far as the criminal history and the court statements at the sentencing hearing, I think it's very evident that any weight that could have been given to the 2013 AUW conviction was so insignificant that it did not affect his sentence, and I'll explain why. I have the court statements here where they said it's R139 of the sentencing. I think the prior criminal history is a significant factor in aggravation, and I considered all the facts and circumstances of this case in the context of how the evidence unfolded at the trial, meaning the facts underlying the offense and the injuries to Mr. Riggs. The history that's before the court suggests the person has a problem obeying court orders, so he's talking about generally the criminal history from the PSI, but specifically the inability to abide by court orders. You know, I didn't understand that. I mean, he's got these convictions. I didn't understand even what the judge meant by abide by court orders. The judge, okay, so if you look at the PSI, when the defendant was convicted, and I believe it's his convictions for the unlawful use of the credit card, a petition to revoke was filed, so he couldn't abide by the court order to follow the terms of probation, whether it be drug testing, not using drugs, alcohol, abstaining, things like that. So a PTR was filed, which he admitted, and then he was placed back on probation, except he was unable to successfully complete that for whatever reasons. That was actually not included in the PSI. And then with regard to the distributing or delivering marijuana, he was also placed on probation, and two PTRs were filed, one of which was because he committed a new crime while he was on probation. And I think that's what the court meant when it referred to he had an inability to abide by court orders. Also, he was on MSR when he committed this crime, which is another indication that he can't abide by court orders. So I believe that's what the court was referring to. And then the court went through and said back in 2010 he was placed on probation, it was not successfully terminated. We referenced another probation violation. And then he spoke about the 2014 sentence to the Department of Corrections, in one sentence, and that he was placed on a period of MSR. I believe he was referring, when he included that, where he did, he was referring to the MSR and the defendant's violation of MSR terms in committing this new crime, rather than specifically the conviction for the AUUW. He wouldn't have been on MSR if he hadn't been convicted of the AUUW. I do agree with that, Your Honor. However, it's our contention that when the court was talking about that, it wasn't in regards to that conviction. It was in regards to a continual pattern of not abiding by court orders. And at the time that he did commit the new crime, that he was on MSR, People v. McFadden had not been decided. So he was lawfully on MSR. So you're suggesting that if he were to, if the court were just to leave that section out of his statement during the sentencing hearing, that everything else that would be included was enough to justify the 29 years? Yes, Your Honor. Yes, Your Honor. Because of the extreme injury to the victims, the way in which the defendant committed the offense, and his prior criminality with regards to his inability to follow court orders, he had had many opportunities to be on probation, and he was unable to abide by the terms of probation. And also, the sentence at the end of the day was in the statutory limits. It was 4 to 30 years, and he got 29 years. So it's our position that the trial court was in the best position to consider all these factors, and he made the decision to sentence him to 29 years. And it's a valid sentence, and we're asking that you guys affirm the sentence of 29 years to the Department of Corrections. If there's no more questions. Thank you. Thank you very much. Thank you, Your Honor. Mr. James Komsky. Yes. Very briefly, I'd just like to found the provision in Reg NG, which I believe supports my assertion. It's paragraph 39 here. The court says, As a matter of federal constitutional law, the judicial declaration of the criminal statute is facially invalid. Under the United States Constitution, means that the statute was fatally infirmed from the moment of its enactment and that the conduct of its sanction was never a crime at all. Ex parte civil is the citation. Accordingly, in contrast to situations where a conviction was obtained through a constitutionally deficient procedure, there's no possibility of guilt or criminal culpability. The underlying conduct was constitutionally immune from punishment.  Or even any type of underlying acts that may have given rise to the AUW conviction and therefore should be considered by the trial court at sentencing. So it's an interesting proposition when you have something like NG come out and then you have this argument by the state that plain error review should be applied. What do you think about that? I mean, so if we do apply plain error, then NG would be the second of the first, if you will. Under the plain error, you even have to show that an error occurred, that the hearing was closely balanced, or that the error was so egregious as to deny the defendant fair sentencing. Yes. So you're saying that N, RE, NG would automatically apply to that second part? Yes. If a plain error review or discussion had occurred, that's exactly what we would say. But then you still have a burden, the defendant has the burden of showing this court that because it was within the statutory range, that there's a presumption the sentence was proper. And I think that the trial court's statements, like I said before, I think that that's what shows that the trial court abused its discretion in considering improper facts and aggravation. It goes back to the consideration sometimes that some of the decisions that you can read that the trial court, if they were to just pronounce a sentence 29 years, it could have been affirmed. Sometimes when the trial court starts to explain, sometimes it can get itself into trouble for lack of a better way to express that. But at the time of the sentencing hearing, McFadden allowed the court to consider it. Exactly. So the court was following the law at the time. Exactly. The court was following the law at the time. So we're coming back after the fact and essentially telling the trial court, you shouldn't have done that. I know, exactly. And that's where the abuse of discretion, since that's the legal language that's used, you almost feel like you have to, even though it's a trial court. And I've got no disagreement that the trial court was following the law at the time. The defense counsel followed the law at the time. The state's attorney, they said, Judge, this has never been vacated. Therefore, under McFadden, you can still use this to consider this. So I think at the time it was certainly followed the law. I think that then the decision in NREA-G, since it was decided during the pendency of this appeal then, I forget the name of the case that I had cited in my brief, that says that any type of new judicial announcement decided during pendency of an appeal and therefore would still apply to that direct appeal. I think that would be the language that shows that, yes, trial court, even though you had done the law, you followed the law, due to Supreme Court overruling some of its earlier precedent, therefore now there's been a change to the law. There is a case, though, that says if a statute is declared unconstitutional, it does not necessarily apply retroactively. So I don't have that in my head right now, but you think that NREA-G must apply retroactively? Yes, I do. And I think that the — Does the case say that? The Supreme Court, it discusses exactly how the statute would be declared unconstitutional. This was a facial challenge. It was a facial finding that it was unconstitutional. That's where that language of it is being null and void from the start, as if it could never have occurred, the conduct underneath it was never sanctioned, obviously beginning with some type of, you know, as-applied constitutional challenge. And I think that that's where the arguments over retroactivity — Is in the as-applied. Exactly. I think that that's where that — Not in the facial. That's my understanding. Okay. So the facial application of the unconstitutional, you think, would have to apply. Yes, yes. Any further questions? Okay. Thank you so much. All right. Thank you, Your Honors. All right. This item will be taken under advisement, and we'll issue an order to approve it.